UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CR-232-BO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **Government's Response in Opposition to Defendant's Motion to Dismiss for Violation of Speedy Trial Act and Violation of 6th Amendment** |
| ) | |
| vs. ) | |
| ) | |
| MICHAEL WYATT COLLIUS ) | |
| ) | |

Now Comes the United States of America, by and through the United States Attorney for the Eastern District of North Carolina, and hereby responds in opposition to Defendant's Motion to Dismiss for Violation of Speedy Trial Act and Violation of 6th Amendment (the "Motion"). (D.E. 25). Defendant's Motion is wholly unsupported by—and indeed contrary to—applicable law and the facts of this case. Accordingly, and for the reasons set forth below, the government respectfully requests the Court deny the Motion. In support thereof, the government shows the Court the following:

## BACKGROUND

In the Fall of 2016, the Federal Bureau of Investigation ("FBI") received a lead concerning the receipt and distribution of child pornography. The investigation proceeded and, in February 2018, the FBI opened a case on the defendant, who was residing at the time in Warren County, North Carolina. Shortly after opening the case, the FBI engaged local authorities, namely, the Warren County Sherriff's Office ("WCSO"), to assist with the investigation. Members of the WCSO actively participated in the investigation, including in surveillance and other efforts to

identify the defendant's current residence. On May 3, 2018, law enforcement obtained a search warrant for the defendant's residence and the same was executed on May 4, 2018. Contrary to the unsupported claim in defendant's Motion, that "[l]ocal law enforcement only stood watch," (Mot. at ¶ 12) FBI agents and members of the WCSO both actively participated in the execution of the search warrant. That same day, defendant was arrested on state charges alleging twelve counts of second degree sexual exploitation of a minor.

On June 7, 2019, a federal grand jury indicted the defendant on three counts: Count One charged the defendant with attempted coercion and enticement of a minor in violation of 18 U.S.C., § 2422(b); Count Two charged the defendant with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2); and Count Three charged the defendant with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (D.E. 1). A warrant for defendant's arrest issued the same day and a federal detainer followed. On July 10, 2019, a superseding indictment issued, alleging the same three counts, while correcting the date associated with Count Two, for receipt of child pornography, and a federal warrant again issued the same day. (D.E. 7). On July 16, 2019—just six days after the superseding federal indictment issued—the defendant had his initial appearance in connection with the federal superseding indictment. (D.E. 15).

## ARGUMENT

The Speedy Trial Act requires the government file an "information or indictment charging an individual with the commission of an offense ... within

thirty days from the date on which such individual was arrested or served with a summons in connection with such offense." 18 U.S.C. § 3161(b). "Since the Act applies only to federal prosecutions it is *only a federal arrest*, not a state arrest, which will trigger the commencement of the time limits set in the Act." *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982) (emphasis added). The Fourth Circuit has further held that even a federal arrest warrant filed as a detainer with the state while the defendant was held in state custody, standing alone, does not trigger the Act. *United States v. Lee*, 818 F.2d 302, 304 (4th Cir. 1987). As the Court explained, the time limitation in § 3161(b) "requires an arrest as well as a charge ... the arrest must be a federal arrest upon a federal charge." *Id*. at 305 (citing *Iaquinta*). *See also United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995).

Indeed, the defendant himself concedes—as he must—that it is only a federal arrest, not a state arrest, which triggers the speedy trial clock: "[I]f one is held by state officers on a state charge and subsequently turned over to federal authorities for federal prosecution, the starting date of the time period is the date that the defendant is delivered into federal custody." (Motion at 5).

The involvement of both state and federal authorities in an investigation leading to an arrest does not change the analysis or otherwise alter the fact that it is only a federal arrest for a federal charge that can trigger the speedy trial clock. In *United States v. Thomas*, the defendant was arrested and taken into custody by state authorities on state charges after a federal warrant had already issued. *Thomas*, 55 F.3d at 148. As the Fourth Circuit explained:

> … a joint state-federal investigation leading to an arrest by state officers on state charges with federal officers present, and the consequent taking of the defendants into state custody, was a state arrest and not a federal arrest, and thus that the Speedy Trial Act was not implicated until the defendants were taken into federal custody.

*Id*. at 148 (internal citations omitted). *See also Iaquinta*, 674 F.2d at 267 (recognizing that "to rule in a cooperative investigation by state and federal authorities, that the federal Speedy Trial Act would 'start ticking at the time of the initial state arrest,' would create an intolerable dilemma, undermining the federal constitutional rule that separate sovereigns can prosecute separately.") (quoting *United States v. Ferrs*, 503 F. Supp. 187, 189 (E.D.Pa. 1980).

Here, the defendant was arrested on May 4, 2018 by *state* officers on *state* charges and the defendant was taken into *state* custody. The defendant cannot credibly suggest that this was anything but a *state* arrest, not a federal arrest, and as such, the May 4, 2018 arrest did *not* trigger the speedy trial clock. *See Iaquinta*, 674 F.2d at 264. The FBI's role in the investigation and execution of the search warrant does not change the fact that the defendant's arrest was by state authorities and to answer to state charges. *See Thomas*, 55 F.3d at 148.

Despite the clarity of the law and the undisputed facts, the defendant attempts to suggest that he was held in state custody "at the behest of the federal government" and that the date of the state arrest should control the speedy trial analysis. (Motion at 5, citing *United States v. Woolfolk*, 399 F.3d 590 (4th Cir. 2005). Defendant's reliance on *Woolfolk* is misplaced. In *Woolfolk*, the Fourth Circuit reiterated the controlling principle that, as long as a state has valid charges

currently pending against a defendant, that individual can never be under "federal arrest" or in "federal custody" so as to trigger the speedy trial clock. *Woolfolk*, 399 F.3d at 595. The Court went on to acknowledge the possibility that "in limited circumstances," the Speedy Trial Act could be triggered if "the Government has knowledge that an individual is held by state authorities *solely* to answer to federal charges." *Id*. at 596 (emphasis added). The Fourth Circuit ultimately remanded for further proceedings because it was unclear from the record why the defendant remained in state custody after state proceedings terminated. *Id*. The facts of *Woolfolk*, however, are decidedly different than those in the instant case.

Here, Defendant cannot dispute that the state charges were still pending at the time the defendant was indicted federally, nor that the state charges were not dismissed until the day before defendant's initial appearance in federal court. Had the defendant not been indicted federally, the state charges against the defendant could have proceeded. Accordingly, the rare circumstance contemplated in *Woolfolk* is not present, because the defendant was not being held in state custody solely to answer to federal charges. The defendant attempts to bolster the fated argument with wholly unsupported assertions that state officers were not substantively involved in the investigation, or acting solely at the direction of federal investigators. Even if these assertions were true—and they are not—it would not alter the simple fact that the defendant was not arrested by federal authorities to answer to federal charges until July 16, 2018. *See Iaquinta*, 674 F.2d at 267-68 (discussing cases where federal involvement in a joint state-federal investigation

was "substantial" or "extensive" and holding that the level of federal involvement in a joint investigation does not control the analysis).

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Defendant's Motion be denied.

Respectfully submitted, this 3rd day of September, 2019.

        ROBERT J. HIGDON, JR.
        United States Attorney

        BY: */s/ Bryan M. Stephany*
        BRYAN M. STEPHANY
        Assistant United States Attorney
        Criminal Division
        United States Attorney's Office
        300 North Third Street, Suite 120
        Wilmington, NC 28401
        Telephone: (910) 769-0794
        Fax: (910) 399-6423
        Email: Bryan.Stephany@usdoj.gov
        NY State Bar No. 4502225

## CERTIFICATE OF SERVICE

This is to certify that I have this 3rd day of September 2019, served a copy of the foregoing Government's Response upon the defendant by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to:

Lewis A. Thompson, III
Banzet, Thompson, Styers & May, PLLC
P.O. Box 535
Warrenton, NC 27589
Telephone: 252-257-3166
Email: al.thompson@banzetlaw.com

BY: */s/ Bryan M. Stephany*
BRYAN M. STEPHANY
Assistant United States Attorney
Criminal Division
United States Attorney's Office
300 North Third Street, Suite 120
Wilmington, NC 28401
Telephone: (910) 769-0794
Fax: (910) 399-6423
Email: Bryan.Stephany@usdoj.gov
NY State Bar No. 4502225